IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CORE AVIONICS & INDUSTRIAL
LLC.,

       Plaintiff,

v.                                CASE NO.:

ALT SOFTWARE, INC.,         **INJUNCTIVE RELIEF SOUGHT**
                                     **DEMAND FOR JURY TRIAL**

       Defendant.

_____/

### VERIFIED COMPLAINT

      Plaintiff, Core Avionics & Industrial LLC. ("Core Avionics"), sues Defendant,

ALT Software, Inc. ("ALT"), and alleges:

      1.     This is an action for declaratory judgment, damages and preliminary and

permanent injunctive relief due to ALT's prior and ongoing breaches of a software

Reseller Agreement, software License Agreement, Asset Purchase Agreement and

Intellectual Property Transfer Agreement with Core Avionics, and ALT's

misappropriation of trade secret source code of Core Avionics. As more specifically set

forth below, ALT's numerous breaches of these agreements have caused, and are

continuing to cause, irreparable harm to Core Avionics by the ongoing and unauthorized

use, distribution, reproduction and disclosure of Core Avionics' software and source code

by ALT.

      2.     Core Avionics is a Delaware limited liability company with its principal

place of business in Tampa, Florida.

3.     ALT is a Canadian corporation incorporated under the laws of the Province of Ontario, Canada, with its principal place of business in Toronto, Ontario, Canada.

4.     The amount in controversy exceeds $75,000 exclusive of interest and costs.

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and §§ 2201-2202.

6.     ALT has contacts with Florida that would be sufficient to subject it to personal jurisdiction in Florida pursuant to Section 48.193(1)(b) and (g), Florida Statutes. Further, pursuant to the contracts at issue in this action, ALT agreed to submit to the jurisdiction of this Court.

7.     Venue in the United States District Court for the Middle District of Florida is proper because ALT contractually agreed to venue in this District and because, under 28 U.S.C. § 1391, a substantial part of the acts or omissions giving rise to the claims stated occurred in this District, the defendant is subject to personal jurisdiction in this District, and as a foreign corporation not resident in the United States, defendant is subject to jurisdiction in any judicial district.

<u>**Core Avionics and Its Business**</u>

8.     Core Avionics sells computer graphics processors and driver software to military and aerospace contractors for incorporation into high-end graphics displays in today's most advanced aircraft.  Core Avionics' customers are industrial, military and aerospace contractors throughout the world.

9.     Core Avionics was formed in 2011 based upon a unique business model. The lifespan of the aircraft in which Core Avionics' products are installed could be several decades, but computer hardware quickly becomes obsolete. Core Avionics maintains inventories of legacy graphics computer processors for its customers when the manufacturer discontinues selling the processors. Core Avionics maintains this inventory in special temperature and humidity controlled chambers.  . Core Avionics has the ability to temperature test  processors it sells to ensure  capability of operation in  extreme environments likely to be faced by aircraft.  This enables the military and aerospace contractors to have a steady, reliable source of supply without having to maintain the inventory themselves.

10.     Core Avionics also develops device driver software to interface with the graphics processors.  Drivers are computer software that interface between the processor and other computer programs.  This software can be delivered to customers in a standard or customized form to meet the customers' needs.  Core Avionics also contracts with its customers to provide service and support for its processors and software.

11.     Because the software Core Avionics sells may be incorporated into critical components of aircraft, the software must, in certain cases, meet rigorous certification requirements of military and aviation regulatory authorities throughout the world.  This includes  the  rigorous  DO-178B  certification  required  by  the  Federal  Aviation Administration for safety critical systems in aircraft.

12.     Due to the manner in which Core Avionics tests its processors, and custom develops software, it is critical to Core Avionics' business model and its quality control

that Core Avionics' driver software only be sold and delivered to those who run the driver software on processors certified by Core Avionics.

13.     One advanced graphics processor on the market today is the AMD Radeon™ E4690 processor (the "E4690") manufactured by Advanced Micro Devices, Inc. ("AMD").

14.     Core Avionics sells the E4690 to its customers, along with certain custom developed device driver software.

15.     Core Avionics' device driver software is developed to interface with graphics programs via industry standard interfaces collectively referred to as "OpenGL". Core Avionics' device driver software includes software designed to meet special OpenGL standards for embedded systems and safety critical components, called "OpenGL", "OpenGL ES" and "OpenGL SC". The drivers contain source code which is compiled into object code and subsequently used to communicate information from the E4690 graphics processor to graphics programs, and from such programs to the E4690 graphics processor, via the relevant OpenGL standard interface. "Source code" is the computer code written in a programming language by software developers. "Object code" or "binary code" is the executable program created by compiling source code into machine-readable language.

16.     To enable Core Avionics to receive from AMD and use certain proprietary information of AMD, Core Avionics has a trade secret agreement with AMD. The agreement permits Core Avionics to have access to, and use of, AMD trade secrets related to the E4690 under certain restrictions.

**ALT and Its Business**

17.     ALT is a software development company located in Toronto, Ontario, Canada.  ALT develops, among other things, driver software for use with the E4690 and other graphics processors.   However, unlike Core Avionics, ALT does not supply temperature tested processors or maintain legacy inventory.

18.     Prior to 2011, ALT had developed for the E4690 two different OpenGL 1.3 Drivers, an OpenGL SC Driver, and an OpenGL ES 2.0 Driver (collectively the "E4690 Drivers").  The E4690 Drivers are designed for use with embedded systems. "Embedded systems" are processors and computer hardware with machine readable programs installed on the hardware.  The OpenGL SC driver is designed for use in DO-178B safety critical certified ("Certified") environments.

**Core Avionics Purchases the E4690 Drivers from ALT**

19.     In 2010 and early 2011, ALT was dealing with various business issues which included changes in the market for its products and corporate financial requirements.

20.     Shortly thereafter, in the second quarter of 2011, ALT approached Core Avionics about the possibility of Core Avionics purchasing technology, intellectual property and related rights to the E4690 Drivers from ALT, including their source code. Such a transaction was attractive to Core Avionics, in part, because it would ensure that Core Avionics owned the technology and intellectual property and related rights to the E4690 Driver source code if ALT became insolvent and failed.

21.     ALT and Core Avionics negotiated an asset purchase transaction whereby

Core Avionics would purchase the E4690 Drivers for $1 million USD and a percentage of the sales of the E4690 Drivers by Core Avionics over five years following the date of the transaction.

22. Senior executives and officers from each company were involved in negotiating the agreements. ALT was represented by outside counsel from Canada in connection with the negotiations.

23. On or about June 21, 2011, Core Avionics and ALT executed and entered the following agreements:

    a. Asset Purchase Agreement attached as **Exhibit 1**;

    b. Intellectual Property Transfer Agreement attached as **Exhibit 2**;

    c. Software Services Agreement attached as **Exhibit 3**;

    d. Commission Agreement attached as **Exhibit 4**;

    e. Secured Promissory Note attached as **Exhibit 5**;

    f. Security Agreement for Intellectual Property attached as **Exhibit 6**;

    g. Reseller Agreement attached as **Exhibit 7**; and

    h. Software License Agreement attached as **Exhibit 8**;

24. The above referenced agreements form part of an integrated transaction between Core Avionics and ALT. However, each agreement is separately enforceable according to its terms.

### The Asset Purchase Agreement

25. Pursuant to the Asset Purchase Agreement, in exchange for $1 million USD from Core Avionics, an agreement by Core Avionics to pay commissions to ALT,

and the assumption of certain liabilities by Core Avionics, ALT sold to Core Avionics all of ALT's right, title and interest in "the copyrights, source code, object code and documentation" identified on Schedule 2.1(a) of the Asset Purchase Agreement and assigned to Core Avionics certain contracts to which ALT was a party. *See Exh.* 1 at § 2.1(a), (b).

26.     Schedule 2.1(a) identifies the property ALT sold to Core Avionics. Generally, Schedule 2.1(a) identifies the standard versions of the E4690 Drivers then developed by ALT and the ALT E4690 Parser tool, a software tool ALT created to capture commands an AMD driver sent to the E4690 processor (collectively the "Purchased E4690 Drivers").

27.     The Purchased E4690 Drivers contain two versions of source code, known by ALT and Core Avionics as the "Apollo" version and "Genesis" version. The source code for both of these versions was delivered to Core Avionics by ALT upon the closing of the Asset Purchase Agreement.

### The Intellectual Property Transfer Agreement

28.     Pursuant to the Intellectual Property Transfer Agreement separately executed by the parties, ALT conveyed to Core Avionics all of its right, title and interest in the "Software", defined by the agreement to be the Purchased E4690 Drivers. *See Exhibit* 2 at § 1. In addition, ALT agreed to deliver to Core Avionics ALT's entire inventory of copies of the Purchased E4690 Drivers in object code form, a master copy of the Purchased E4690 Drivers in source code and object code form, and all system and user documentation pertaining to the Purchased E4690 Drivers.

29.     ALT warranted to Core Avionics in the Intellectual Property Transfer Agreement that Core Avionics would receive "complete and exclusive right, title and interest in and to all tangible and intangible property rights existing in the Software, subject only to the rights reserved and retained pursuant to this Agreement." *See Exhibit* 2, at § 4.4.

30.     No rights in the "Software" were reserved or retained by ALT in the Intellectual Property Transfer Agreement, except that, pursuant to the Intellectual Property Transfer Agreement, ALT was permitted to retain a "reasonable number" of copies of the software in object and source code form "solely for non-productive reference purposes with respect to its obligations under this Agreement and its rights under certain other agreements of even date." *See Exhibit* 2, at § 3.

### Core Avionics Pays ALT $1 million Plus Commissions for the E4690 Drivers

31.     Core Avionics paid ALT $250,000 in cash at the closing of the asset purchase transaction. Core Avionics also delivered to ALT the Secured Promissory Note for $750,000. *See Exhibit* 5. Since the closing, Core Avionics fully paid ALT the $750,000 and satisfied the Secured Promissory Note.

32.     As reflected in the Commission Agreement, Core Avionics further agreed to pay ALT ten percent (10%) of the gross revenue received by Core Avionics through the sale or license of the Purchased E4690 Drivers. *See Exhibit* 4.

33.     In the Commission Agreement, ALT again agreed that Core Avionics "is the owner" of the Purchased E4690 Drivers and "and all portions thereof and that [Core Avionics] has the right to modify same and to grant licenses or sublicenses for its use

and/or sale." *See Exhibit* 4, § 4.

34.     The Commission Agreement defined the term "Products" to mean the Purchased E4690 Drivers.  In the Commission Agreement, ALT further agreed that it would not "sell, transfer, publish, disclose, display or otherwise make available the Products or copies thereof to others except pursuant to a Reseller Agreement" between Core Avionics and ALT or without written consent of Core Avionics. *See Exhibit* 4, § 6. ALT further agreed to use reasonable efforts to restrict the Purchased E4690 Drivers from unauthorized disclosure. *See Exhibit* 4, § 6.

35.     As collateral security for the Secured Promissory Note and Core Avionics' other monetary liabilities under the Asset Purchase Agreement, Core Avionics pledged the Purchased E4690 Drivers to ALT. *See Exhibit* 6.

**Post-Closing Relationship Under the Reseller Agreement and License Agreement**

36.     Core Avionics and ALT contemplated as part of the asset purchase transaction that, after the closing, ALT would continue to:

a.  provide software development services and technical support to Core Avionics under the Software Services Agreement, *see Exhibit* 3;

b.  have the authority to re-sell the Purchased E4690 Drivers to third parties as a Core Avionics product under the Reseller Agreement, *see Exhibit* 7; and

c.  engage in modification, customization and development of the Purchased E4690 Drivers, (the "Customized E4690 Drivers"), under the License Agreement, *see Exhibit* 8, § 2.1.

37.     Thus, it was contemplated that the parties would work cooperatively together to sell and support the Purchased E4690 Drivers, including the Customized E4690 Drivers (as defined below).

### The Reseller Agreement

38.     Effective June 21, 2011, in connection with the asset purchase transaction, Core Avionics and ALT entered into a Reseller Agreement. *See Exhibit* 7.

39.     The Reseller Agreement had a one-year term with no automatic renewal.

40.     Pursuant to Section 3.1 of the Reseller Agreement, ALT agreed to use commercially reasonable efforts to market and sell the Purchased E4690 Drivers.

41.     Pursuant to Section 3.5 of the Reseller Agreement, ALT again agreed that Core Avionics was the sole owner of all intellectual property, including copyrights and proprietary and confidential information, contained within the Purchased E4690 Drivers.

42.     Section 3.8 of the Reseller Agreement required ALT to release or sell only those Purchased E4690 Drivers that are compatible with a unique device identification code and part number obtained by Core Avionics from AMD to denominate the processors Core Avionics purchases, tests and certifies from AMD. Specifically, Section 3.8 provided:

> All Products released or sold by ALT must contain the unique device identification code, and must only be compatible with, Advanced Micro Devices, Inc. 100-CK3802, PN 216-0729068, unless authorized in writing by [Core Avionics] to deviate from this requirement. Further, ALT may not release or sell driver or software products compatible with Advanced Micro Devices, Inc. 100-CG1820, PN 216-0729055.

43.     Section 3.11 of the Reseller Agreement required ALT to require that any

customer to whom it sold the Purchased E4690 Drivers only utilize the driver software on hardware supplied by Core Avionics or its affiliates, Channel One Limited or Channel One International, LLC.

44.     Section 3.9 of the Reseller Agreement forbade ALT from releasing or selling source code for the Purchased E4690 Drivers to any third party without the consent of Core Avionics.

45.     Because ALT was to continue its software development work under the License Agreement, Section 3.13 of the Reseller Agreement required ALT to provide Core Avionics with any revisions, modifications or updates to the Purchased E4690 Drivers, including any source code, namely the Customized E4690 Drivers, on a monthly basis.

46.     The Reseller Agreement expired pursuant to its terms on June 21, 2012.

47.     Paragraph 11.3 of the Reseller Agreement provided that, upon termination:

> ALT shall promptly return to [Core Avionics] all materials and items furnished to it or ALT's representatives by [Core Avionics] under this Agreement, and shall at the same time cease to use all [Core Avionics] intellectual property, including but not limited to…copyrights…proprietary and confidential information or trade secrets, the use of which was obtained by virtue of this Agreement.

### The License Agreement

48.     Effective June 21, 2011, Core Avionics and ALT entered into a Software License Agreement whereby Core Avionics licensed back to ALT certain rights with respect to the Purchased E4690 Drivers. *See Exhibit* 8.

49.     The License Agreement defines the term "Licensed Software" to include

the Purchased E4690 Drivers, together with "Derivative Works" and "Updates" as those terms are defined.

50.     Section 1.4 of the License Agreement defines the term "Derivative Work" to mean:

> any software program(s), and copies thereof, which are developed by [Core Avionics] or Licensee and which are based on or incorporate any part of the Licensed Software provided by [Core Avionics] under this Agreement, including without limitation, any revision, modification, translation, abridgement, condensation, expansion, or any other form in which the Licensed Software may be recast, transformed or adapted, and that, if created without [Core Avionics'] prior consent, would constitute infringement of [Core Avionics'] intellectual property and proprietary information rights, which may include copyright, patent or trademark rights and/or trade secrets within the Licensed Software.

*Exhibit* 4, at § 1.4.

51.     Section 4.1 of the License Agreement provided that Core Avionics retained title to the Purchased E4690 Software and all "Derivative Works." *Exhibit* 4, at § 4.1.

52.     Pursuant to the License Agreement, Core Avionics granted to ALT a limited, non-exclusive license to the Purchased E4690 Drivers for limited purposes specified in Section 2 of the License Agreement, including development services whereby ALT would use the source code to create modifications to the Purchased E4690 Drivers, resulting in the Customized E4690 Drivers, for purposes of fulfilling obligations on behalf of Core Avionics' customers and ALT's customers under the Reseller Agreement. *See Exhibit* 8, § 2.1.

53.     Although the License Agreement required ALT to pay to Core Avionics a nominal royalty fee of $1.00, the License Agreement contained extensive and detailed

restrictions on ALT's use and exploitation of the Purchased E4690 Drivers. Section 4.1 of the License Agreement provided that ALT was not permitted to commercialize or transfer the Purchased E4690 Software except as provided in the License Agreement. *See Exhibit* 8, § 4.1.

54.     Pursuant to Section 3.1.2 of the License Agreement, ALT was only permitted to distribute the binary or object code version of the Purchased E4690 Drivers and any such disclosure must be governed by an end user agreement required by Section 3.2 of the License Agreement. Section 3.2 of the License Agreement required the end user agreements to contain limitations at least as restrictive as those contained in the License Agreement and giving no more rights in the Purchased E4690 Drivers than those held by ALT.

55.     Section 3.1.6 of the License Agreement specifically prohibited ALT from creating "Derivative Works" of the Purchased E4690 Drivers "in any manner that would cause the Licensed Software to become subject to any of the terms of an Excluded License" or distribute the Purchased E4690 Drivers "or derivative works thereof" in a manner that would cause the Licensed Software to become subject to the terms of an "Excluded License". The License Agreement defined the term "Excluded License" to mean, among other things, any license that required that the Licensed Software be distributed in source code form, subject to a license which permitted making derivative works, or redistributable at no charge. *See Exhibit* 8, § 3.1.6.

56.     Section 3.1.7 of the License Agreement prohibited ALT from copying, reproducing or distributing the Purchased E4690 Drivers except as permitted by the

License Agreement.

57.     Section 3.1.8 of the License Agreement prohibited ALT from licensing or selling the Purchased E4690 Drivers as a stand-alone product.

58.     Section 3.1.9 of the License Agreement prohibited ALT from granting access to the Purchased E4690 Drivers without Core Avionics' consent.

59.     Section 3.1.14 of the License Agreement required that all products created by, used by or modified by ALT which incorporated or utilized the Purchased E4690 Drivers contain the unique device identification code, and only be compatible with, AMD part number 100-CK3802, PN 216-0729068 unless authorized in writing by Core Avionics.

60.     Section 3.1.15 of the License Agreement prohibited ALT from selling the source code for the Purchased E4690 Drivers without prior written approval of Core Avionics.

61.     Section 3.1.16 of the License Agreement required ALT to transmit to Core Avionics on a monthly basis, all revisions, modifications and updates to the Purchase E4690 Drivers, including source code.

62.     Section 9.1.1 of the License Agreement provided that the License Agreement could be terminated by Core Avionics on 60 days' notice to ALT.

**ALT Breaches the License Agreement and Reseller Agreement**

63.     During the term of the License Agreement and Reseller Agreement and thereafter, ALT breached the License Agreement and Reseller Agreement, or both agreements, in numerous respects and on multiple occasions, as set forth below,

including:

a.  disclosing the source code for the Purchased E4690 Drivers, including the Customized E4690 Drivers, to third parties without authorization;

b.  releasing source code and object code for the Purchased E4690 Drivers, including the Customized E4690 Drivers, to third parties without end user agreements or sub-license agreements;

c.  releasing source code and object code for the Purchased E4690 Drivers, including the Customized E4690 Drivers, to third parties under end user agreements less restrictive than the rights granted by Core Avionics to ALT;

d.  engaging in unauthorized software development using the source code for the Purchased E4690 Drivers to create, sell and offer for sale unauthorized derivative works, including the Customized E4690 Drivers;

e.  selling or licensing the Purchased E4690 Drivers, including the Customized E4690 Drivers, to third parties as a stand-alone product and without the required unique device identification lock and compatibility features;

f.  failing to pay amounts due to Core Avionics;

g.  failing to provide Core Avionics with revisions, updates, or modifications to the Purchased E4690 Drivers, including the Customized E4690 Drivers, made by ALT, or the related documentation, including such revisions, updates, modifications and documentation released to customers; and

h.  failing upon termination to return all materials and items furnished to it by Core Avionics.

64.    Effective October 25, 2011, ALT entered into a sub-license of one of the Customized E4690 Drivers, the OpenGL SC Driver, to Chelton Avionics, Inc. doing business as Cobham Aerospace Communications (the "Cobham License" and "Cobham"). The Cobham License permitted Cobham to have access to the source code for the Customized E4690 Drivers. ALT did not obtain approval from Core Avionics to grant Cobham access to the source code.

65.    On or about April 10, 2012, ALT entered into a sub-license agreement with Singapore Technologies Aerospace, Ltd. ("ST Aero") licensing to ST Aero the right to use and copy the Apollo version of the OpenGL 1.3 driver, one of the Customized E4690 Drivers. The ST Aero license agreement contained no restrictions limiting the use of driver software as required by Section 3.1.14 of the License Agreement. ALT also failed to provide a purchase order to Core Avionics for the ST Aero license. ALT failed to pay Core Avionics a license fee for the production license to ST Aero.

66.    Between June 2011 and April 2012, without authorization from Core Avionics, ALT made at least eight deliveries of releases of the Purchased E4690 Drivers to AITECH, a defense contractor, without sub-license agreements or end user agreements in effect.

67.    ALT has released and delivered to Lockheed Martin, a defense contractor, versions of the Purchased E4690 Drivers which are outside the scope of ALT's sub-license with Lockheed Martin.

68.     On or about April 11, 2012, in breach of the License Agreement and Reseller Agreement, ALT modified the default configuration settings in the source code for the Purchased E4690 Drivers, including the Customized E4690 Drivers, so that they would be compatible with all AMD E4690 processors, not just those sold by Core Avionics and its affiliates.

69.     ALT failed to ever implement the device identification lock and compatibility restrictions required by the Asset Purchase Agreement, License Agreement and Reseller Agreement for the Genesis version of the Purchased E4690 Drivers.

70.     Between June 21, 2011 and the present, without authorization from Core Avionics, ALT has released Purchase E4690 Drivers or Customized E4690 Drivers without the required device identification lock and compatibility restrictions to the following customers: MI Electronics, BICEA, Chinese Aeronautical Radio Electronics Research Institute ("CARERI"), Coordinate, Cobham, ENSCO iData, General Dynamics UK, Silver Atena, Techsource, VME Tech, and Intellics.  Core Avionics' investigation is ongoing and it may be possible ALT has delivered unlocked driver software to other third parties.

71.     After June 21, 2011, and without the authorization of Core Avionics, ALT undertook to develop OpenGL driver software for the next generation of AMD graphics processors, the AMD E6760 graphics processor unit (the "E6760").

72.     Upon information and belief, the E6760 software development work began in early 2012.

73.     Between January 2012 and May 31, 2012, ALT developed a new driver

software, based upon the "Genesis" version of the source code for the Purchased E4690 Drivers to support the AMD Radeon E6760 GPU (the "E6760 Driver").

74.     On or about May 31, 2012, during the term of the License Agreement and Reseller Agreement, ALT issued a press release stating that it was "announcing plans to release the fourth generation of their widely adopted graphics drivers." A true and correct copy of the press release is attached as **Exhibit 9.**

75.     The press release states the E6760 Driver "will support both OpenGL ES 1.1 and 2.0 graphics APIs" and that the E6760 Driver, "ALT Software's new graphics driver architecture is the fourth generation of their popular embedded OpenGL product line."

76.     The "third generation" of the ALT OpenGL product line is the Purchased E4690 Drivers and related technology which ALT sold to Core Avionics together with the intellectual property rights therein.

77.     On information and belief, ALT's fourth generation architecture and E6760 Driver are based on the Purchased E4690 Drivers.

78.     Beginning in January 2012, ALT also started development of a new driver software based upon the Apollo version of the source code for the Purchased E4690 Drivers to support the Intel HD3000 processor (the "HD3000 Driver").

79.     ALT's development of the HD3000 Driver was without authorization from Core Avionics.

80.     ALT developed and delivered to MI Electronics, in July 2011, a driver package known as the "X11" driver which incorporated an object code build of the

Apollo version of Purchased E4690 Drivers the source code of which had been modified to work in a Microsoft Windows environment. This modification to the source code and delivery of the X11 driver was done without the authorization or consent of Core Avionics.

**Core Avionics Terminates the License Agreement
and the Reseller Agreement Expires**

81.    The Reseller Agreement expired by its terms on June 21, 2012.

82.    On May 9, 2012, Core Avionics gave ALT notice of termination of the License Agreement. A true and correct copy of the May 9, 2012 letter providing notice of termination is attached as **Exhibit 10**.

83.    Accordingly the License Agreement terminated 60 days thereafter, on July 8, 2012.

84.    On or about June 8, 2012, Core Avionics sent ALT a letter setting forth the various breaches by ALT of the Reseller Agreement and the License Agreement. A true and correct copy of the June 8, 2012 letter is attached as **Exhibit 11**.

85.    ALT has failed to cure the breaches as set forth in the June 8, 2012 letter.

86.    ALT responded to the June 8 letter through counsel by letter dated June 21, 2012. A true and correct copy of the June 21, 2012 letter is attached as **Exhibit 12**. In its response, ALT acknowledged that it had failed to comply with numerous obligations, made general denials of other claims of breach and gave other evasive and incomplete responses.

87.    Core Avionics reiterated its demands to ALT, specifically addressing each of ALT's denials and evasive answers, in a letter dated July 3, 2012. A true and correct

copy of the July 3, 2012 letter is attached as **Exhibit 13**.

88.     ALT has failed to cure or remedy the breaches set forth in the June 8, 2012 letter.

### Audit by Core Avionics of ALT's Records and Discovery of Unmade Payments and Non-Existent or Inadequate Sub-Licenses

89.     Section 7 of the License Agreement and Section 3.7 of the Reseller Agreement gave Core Avionics the right to audit the records of ALT. The June 8, 2012 letter gave notice to ALT of the intention of Core Avionics to audit ALT's records and compliance with the License Agreement and Reseller Agreement.

90.     The audit commenced at ALT's offices in Ontario on or about June 26, 2012.

91.     During the audit, despite requests by Core Avionics, ALT failed to produce to Core Avionics all license agreements between ALT and third parties for the Purchased E4690 Drivers; customer purchase orders for the Purchased E4690 Drivers; or ALT quotes to customers for the sale or license of the Purchased E4690 Drivers. During the audit, Core Avionics discovered that, as set forth more fully herein, ALT had disclosed the software to third parties without end-user license agreements or based upon end-user license agreements which were not as restrictive as the license granted by Core Avionics to ALT.

92.     By letter dated July 3, 2012, Core Avionics made demand upon ALT for the information not produced in the initial portion of the audit. ALT has failed and refused to comply and produce the requested documents.

93.     As a result of the initial portion of the audit, Core Avionics learned at least

$63,000.00 in fees is due and owing to Core Avionics from ALT under the Reseller Agreement.

94.     By letter dated July 13, 2012, Core Avionics made demand upon ALT for immediate payment of the $63,000.00. ALT has admitted that it owed Core Avionics the money but refused to make such payment in breach of the Reseller Agreement.

### ALT's Continued Unauthorized Use and Disclosure of the E4690 Drivers After Termination of the License and Reseller Agreement

95.     Upon termination of the License Agreement, Section 9.2 of the License Agreement required ALT to immediately cease using and destroy or return to Core Avionics all copies of Core Avionics' confidential information, including the source code and object code for the Purchased E4690 Drivers, including any partial copies or modified versions (the Customized E4690 Drivers), with certain exceptions for ongoing support obligations.

96.     Although the License Agreement was terminated on July 8, 2012, despite repeated demands by Core Avionics, ALT has failed and refused to comply with Section 9.2 of the License Agreement.

97.     Upon termination of the Reseller Agreement, ALT breached the Reseller Agreement by failing to return materials to Core Avionics as required by Section 11.3. ALT further breached Section 11.3 by failing to cease its use of Core Avionics' proprietary and confidential information and trade secrets, including but not limited to the source code for the Purchased E4690 Drivers.

98.     Instead, without the authorization of Core Avionics and after termination of the License Agreement and expiration of the Reseller Agreement, on or about July 24,

2012, ALT delivered one or more of the Purchased E4690 Drivers or Customized E4690 Drivers to a customer, ENSCO iData, to be integrated and delivered to Northrop Grumman, another defense contractor.  ENSCO iData forwarded the software to Core Avionics and inquired whether ALT was licensed to provide the software to ENSCO iData and Northrop Grumman.

99.     On or about July 26, 2012, Core Avionics, through counsel, demanded that ALT cease and desist from further use or disclosure of the Purchased E4690 Drivers. ALT has refused to comply. A true and correct copy of the letter is attached as **Exhibit 14**.

100.     After the termination of the License Agreement and the expiration of the Reseller Agreement, without the knowledge or consent of Core Avionics, ALT delivered source code for the Genesis version of the Purchased E4690 Drivers, or Customized E4690 Drivers, to CARERI, which is an institute doing electronics contracting work for the Chinese aerospace and industrial markets.

101.     Further, ALT has proceeded with the performance of its contracts with third parties to develop and deliver Customized E4690 Drivers as if it were licensed to do so despite demand by Core Avionics that ALT cease doing so.

102.     ALT continues to advertise on its website the sale of drivers competitive with the Purchased E4690 Drivers and continues to attempt to sell the Purchased E4690 Drivers, including the Customized E4690 Drivers.   A page from ALT's website advertises "Embedded OpenGL Graphics Drivers" for the "AMD ATI Radeon family of GPUs", which includes the E4690, that provide "Hardware accelerated support for

OpenGL ES 1.1, OpenGL ES 2.0, OpenGL SC, Open GL 1.3". A true and correct copy of the website page is attached as **Exhibit 15**. ALT is also advertising such software on a product brochure downloadable from their website. A true and correct copy of this product brochure is attached as **Exhibit 16**, which was downloaded from ALT's website on or about August 23, 2012.

103. During the week of July 23, 2012, ALT held technical requirements review meetings for the sale of the Purchased E4690 Drivers to an existing or potential customer, TechSource and Mercury, even though the License Agreement and Reseller Agreement had been terminated.

104. On information and belief, ALT has made statements to third parties, including Honeywell, Green Hills, Curtiss-Wright and ENSCO iData, that ALT is questioning that Core Avionics owns the exclusive rights to the Purchased E4690 Drivers and that ALT will continue to provide software development services for the Purchased E4690 Drivers even after the termination of the License Agreement and expiration of the Reseller Agreement.

105. Core Avionics has retained the undersigned attorneys, is obligated to pay them a reasonable fee for their services, and is permitted to recover its attorney's fees pursuant to the Intellectual Property Transfer Agreement and the Florida Uniform Trade Secrets Act.

106. All conditions precedent to the bringing of this action have occurred or have been waived.

## Count 1 - Breach of Reseller Agreement

107.   Core Avionics realleges and incorporates Paragraphs 1-106.

108.   The Reseller Agreement is a contract between Core Avionics and ALT.

109.   The Reseller Agreement was supported by consideration.

110.   ALT breached the Reseller Agreement by failing to comply with the audit requirements of Section 3.5.

111.   ALT breached the Reseller Agreement by selling or licensing the Purchased E4690 Drivers, including the Customized E4690 Drivers, to third parties without the unique identification code and device compatibility lock required by Section 3.8.

112.   ALT's sale or release of the Purchased E4690 Drivers, including the Customized E4690 Drivers, to third parties without the unique identification and compatibility lock features has damaged Core Avionics.  ALT's breach of the Reseller Agreement could potentially enable ALT's customers to use the Purchased E4690 Drivers, including the Customized E4690 Drivers, with AMD E4690 processors not tested by Core Avionics in mission critical systems on aircraft, resulting in existing and future lost sales to Core Avionics.

113.   ALT breached the Reseller Agreement by releasing to third parties the source code for the Purchased E4690 Drivers, including the Customized E4690 Drivers, without the consent of Core Avionics in violation of Section 3.9 and 9.1 of the Reseller Agreement.  Specifically, ALT released or disclosed the source code to: CARERI and Honeywell.

114.    ALT breached the Reseller Agreement by selling the Purchased E4690 Drivers, including the Customized E4690 Drivers, to third parties without requiring that the driver software only be used with hardware supplied by Core Avionics or its affiliates in violation of Section 3.11, including to CARERI, Honeywell and Cobham.

115.    ALT breached the Reseller Agreement by selling the Purchased E4690 Drivers, including the Customized E4690 Drivers, to third parties without paying Core Avionics the amounts due under the Reseller Agreement in violation of Section 5.2 and 8.1.  To date, at least $63,000.00 is due and owing to Core Avionics from ALT.

116.    ALT breached the Reseller Agreement by failing to provide Core Avionics with all revisions, updates or modifications to the Purchased E4690 Drivers, namely the Customized E4690 Drivers, as required by Section 3.13.

117.    Upon termination of the Reseller Agreement, ALT breached the Reseller Agreement by failing to return materials to Core Avionics as required by Section 11.3. ALT further breached Section 11.3 by failing to cease its use of Core Avionics' proprietary and confidential information and trade secrets, including but not limited to the source code for the Purchased E4690 Drivers, including the Customized E4690 Drivers.

118.    As a result of ALT's breaches, Core Avionics has been damaged.

**Count 2 – Specific Performance and Injunction to Compel Performance of Obligations Under Reseller Agreement**

119.    Core Avionics realleges and incorporates Paragraphs 1-106.

120.    This is an action for specific performance and injunction to compel ALT to comply with Section 3.13 and 11.3 under the Reseller Agreement.

121.    The Reseller Agreement is a contract between Core Avionics and ALT.

122.    The Reseller Agreement was supported by consideration.

123.    ALT breached the Reseller Agreement by failing to provide Core Avionics with all revisions, updates or modifications to the Purchased E4690 Drivers, namely the Customized E4690 Drivers, as required by Section 3.13.

124.    Upon termination of the Reseller Agreement, ALT breached the Reseller Agreement by failing to return all materials to Core Avionics as required by Section 11.3. ALT further breached Section 11.3 by failing to cease its use of Core Avionics' proprietary and confidential information and trade secrets, including but not limited to the source code for the Purchased E4690 Drivers, including the Customized E4690 Drivers.

125.    ALT's ongoing use and disclosure of the source code has caused, and will continue to cause, irreparable harm to Core Avionics.  Because ALT has failed and refused to turn over all copies of the source code to Core Avionics in compliance with its obligations upon termination of the Reseller Agreement, there is a significant and ongoing risk that ALT will disclose the source code or Purchased E4690 Drivers, including the Customized E4690 Drivers, to third parties again without authorization from Core Avionics.  Indeed, ALT has released one or more of the Purchased E4690 Drivers, including the Customized E4690 Drivers, to third parties after the termination of the Reseller Agreement without authorization from Core Avionics.

126.    Without the source code, release builds and software documentation that ALT delivered to third parties, which should have been provided to Core Avionics during the term of the Reseller Agreement, Core Avionics may be unable to assist customers in the future with customizations or development work as needed to the Purchased E4690

Drivers, including the Customized E4690 Drivers.

127.   Damages are inadequate to compensate Core Avionics for ALT's breaches of Section 3.13 and 11.3.

128.   ALT has the ability to perform its obligations under Section 3.13 and 11.3 of the Reseller Agreement but has refused to do so.

129.   Unless restrained or enjoined by this Court, ALT will continue its unauthorized use and disclosure of the Purchased E4690 Drivers.

130.   Core Avionics has no adequate remedy at law.

### Count 3 – Breach of License Agreement

131.   Core Avionics realleges and incorporates Paragraphs 1-106.

132.   The License Agreement is a contract between Core Avionics and ALT.

133.   The Agreement was supported by consideration.

134.   The source code for the Purchased E4690 Drivers, including the Customized E4690 Drivers, constitutes confidential and proprietary information of Core Avionics as recognized by Section 8.2 of the License Agreement.

135.   ALT breached Sections 3.1.2, 3.1.12, 3.1.15 and 8.2 of the License Agreement by distributing, selling or disclosing source code for one or more of the Purchased E4690 Drivers to third parties, including but not limited to CARERI, without authorization or approval from Core Avionics.

136.   ALT breached Section 3.1.12 and 3.2 of the License Agreement by failing to enter into End User Agreements with customers at all, or by failing to enter into End User Agreements containing restrictions upon the use of the Purchased E4690 Drivers,

including the Customized E4690 Drivers, at least as restrictive as those contained in the License Agreement. After the closing of the Asset Purchase Agreement, ALT released, disclosed, transferred, sold or licensed the Purchased E4690 Drivers, including the Customized E4690 Drivers, to each of the following customers, but failed to obtain End User Agreements: AITECH, CARERI, MI Electronics, VME Tech, Intellics, Coordinate, Elbit Systems of America (EFW) and Silver Atena. Core Avionics has made demand upon ALT for copies of the End User Agreements ALT has entered with customers. ALT has failed to provide End User Agreements for any of these customers. Core Avionics' investigation is ongoing and it may be possible ALT has delivered software to other third parties without license agreements.

137.   ALT further breached Section 3.1.12 and Section 3.2 of the License Agreement with respect to Lockheed Martin, Cobham, ST Aero, BICEA, and COTS Technology Co., Ltd. by releasing, disclosing, transferring, selling or licensing the Purchased E4690 Drivers, including the Customized E4690 Drivers, without license restrictions at least as restrictive as those contained in the License Agreement. Core Avionics' investigation is ongoing and it may be possible ALT has delivered software to other third parties without license agreements at least as restrictive as those between Core Avionics and ALT.

138.   ALT breached Section 3.1.8 of the Licensing Agreement by licensing, selling or distributing the Purchased E4690 Drivers, including the Customized E4690 Drivers, as a stand-alone product.

139.   ALT breached Sections 3.1.14 of the Licensing Agreement by selling or

licensing the Purchased E4690 Drivers, including the Customized E4690 Drivers, to third parties without the unique identification code and device compatibility lock required by Section 3.1.14.

140.   ALT breached Section 3.1.16 by failing, on a monthly basis or at all, to transmit all revisions, modifications and updates to the Purchased E4690 Drivers, namely the Customized E4690 Drivers, including source code, to Core Avionics.  Indeed, prior to and since the termination of the License Agreement, Core Avionics has made repeated demands that ALT turn over to Core Avionics all revisions to the Purchased E4690 Drivers maintained by ALT.  ALT recently turned over some of the revisions, but has failed to turn over all of the revisions.

141.   ALT breached Section 9.2 of the License Agreement by refusing to cease its use and destroy or return to Core Avionics all copies of the Purchased E4690 Drivers, namely the Customized E4690 Drivers, including partial copies and modified versions. Instead, as alleged above, ALT has continued its use or disclosure of the Purchased E4690 Drivers, namely the Customized E4690 Drivers, by, among other things, delivering the software to third parties.

142.   ALT breached Sections 2.1 and 3.1.7 of the License Agreement by engaging in development services with use of the Licensed Software and by copying, reproducing, distributing and modifying the Licensed Software to create the HD3000 Driver.

143.   As a result of ALT's breaches, Core Avionics has been damaged.

**Count 4 – Specific Performance and Injunction to Compel Performance of**
**Certain Obligations Under License Agreement**

144.   Core Avionics realleges and incorporates Paragraphs 1-106.

145.   This is an action for specific performance to compel ALT to comply with Sections 3.1.16, 8.2 and 9.2 of the License Agreement and for an injunction to compel ALT to restrain ALT from further violating Section 3.1.2, 3.1.12, 3.1.14 and 3.1.15 of the License Agreement.

146.   The License Agreement is a contract between Core Avionics and ALT.

147.   The Agreement was supported by consideration.

148.   ALT breached Sections 3.1.14 of the Licensing Agreement by selling or licensing the Purchased E4690 Drivers, including the Customized E4690 Drivers, to third parties without the unique identification code and device compatibility lock required by Section 3.1.14.

149.   ALT's sale or release of the Purchased E4690 Drivers, including the Customized E4690 Drivers, to third parties without the unique identification and compatibility lock features has caused irreparable harm to Core Avionics. ALT's breach of the Reseller Agreement could potentially enable ALT's customers to use the Purchased E4690 Drivers, including the Customized E4690 Drivers, with AMD E4690 processors not tested by Core Avionics in mission critical systems on aircraft, subjecting Core Avionics to potential liability and affecting Core Avionics' customer goodwill. ALT's conduct could also damage Core Avionics' supplier relationship with AMD, which has designated Core Avionics as a source supplier for AMD processors to be deployed in environments requiring high reliability such as in aircraft. Such harm is not capable of

being redressed by monetary damages.

150.    ALT breached Section 3.1.16 by failing, on a monthly basis or at all, to transmit all revisions, modifications and updates to the Purchased E4690 Drivers, namely the Customized E4690 Drivers, including source code, to Core Avionics.  Indeed, prior to and since the termination of the License Agreement, Core Avionics has made repeated demands that ALT turn over to Core Avionics all revisions to the Purchased E4690 Drivers maintained by ALT.  ALT recently turned over some of the revisions, but has failed to turn over all the revisions.

151.    The source code to the Purchased E4690 Drivers, including the Customized E4690 Drivers, constitutes confidential and proprietary information of Core Avionics as recognized by Section 8.2 of the License Agreement.

152.    ALT breached Sections 3.1.2, 3.1.12, 3.1.15 and 8.2 of the License Agreement by distributing, selling or disclosing source code for one or more of the Purchased E4690 Drivers to third parties, including CARERI, without authorization or approval from Core Avionics.  ALT licensed the source code to Cobham to undertake certification of the software without authorization from Core Avionics.

153.    ALT's disclosure of the source code has caused, and will cause, irreparable harm to Core Avionics.  Due to ALT's unauthorized disclosures as set forth above, and because ALT has failed and refused to turn over all copies of the source code to Core Avionics in compliance with its obligations upon termination of the License Agreement and Reseller Agreement, there is a significant and ongoing risk that ALT will continue to disclose the source code to third parties repeatedly without authorization from Core

Avionics.

154.   ALT breached Section 9.2 of the License Agreement by refusing to cease its use and destroy or return to Core Avionics all copies of the Purchased E4690 Drivers, including the Customized E4690 Drivers, including partial copies and modified versions. Instead, as alleged above, ALT has continued its use or disclosure of the Purchased E4690 Drivers by, among other things, delivering the software to third parties.

155.   ALT's continued use and disclosure of the Purchased E4690 Drivers, including the Customized E4690 Drivers, has caused and will cause irreparable harm to Core Avionics.

156.   Damages are inadequate to compensate Core Avionics for ALT's breaches.

157.   ALT has the ability to perform its obligations under the License Agreement but has refused to do so.

158.   Unless restrained or enjoined by this Court, ALT will continue its unauthorized use and disclosure of the Purchased E4690 Drivers, including the Customized E4690 Drivers.

159.   Core Avionics has no adequate remedy at law.

### Count 5 – Specific Performance to Compel Performance of Intellectual Property Transfer Agreement

160.   Core Avionics realleges and incorporates Paragraphs 1-106.

161.   This is an action for specific performance to compel ALT to comply with Section 2 of the Intellectual Property Transfer Agreement.

162.   The Intellectual Property Transfer Agreement is a contract between Core

Avionics and ALT.

163. The Intellectual Property Transfer Agreement was supported by consideration.

164. Section 2 of the Intellectual Property Transfer Agreement required ALT, upon execution of the agreement to:

> deliver to Assignee (1) its entire inventory of copies of the Software in object code form; (2) a master copy of the Software (in both source code and object code form, if applicable), which shall be in a form suitable for copying; and (3) all system and user documentation pertaining to the Software, if any, including design development specifications, error reports, and related correspondence and memoranda.

165. ALT breached Section 2 of the Intellectual Property Transfer Agreement by failing to deliver the required materials to Core Avionics. This includes, but is not limited to the following documents related to the Purchased E4690 Drivers: agreements where ALT agreed to indemnify another person or entity against charges of infringement; all preexisting contracts and license agreements; all system and user documentation; customer orders; package lists of deliverables; actual complete release packages; test applications; Khronos Conform test ports; "Apollo Card Specific Library Developer Guide Generic Content"; and "Generic Apollo Video Capture FPGA Design Description."

166. Core Avionics made demand upon ALT for turnover of these materials by letter dated June 8, 2012. However, to date, ALT has failed and refused to comply.

167. ALT's failure to deliver the required materials has caused irreparable harm to Core Avionics. Due to ALT's failure to deliver the materials, Core Avionics is unable to respond to customer inquiries with respect to potential defects or customizations in the

software.

168.     ALT has the ability to perform its obligations under Section 2 of the Intellectual Property Transfer Agreement but has refused to do so.

169.     Core Avionics has no adequate remedy at law.

170.     Pursuant to the Intellectual Property Transfer Agreement, Core Avionics is entitled to recover its attorney's fees and costs in connection with this action.

### Count 6 – Breach of Asset Purchase Agreement

171.     Core Avionics realleges and incorporates Paragraphs 1-106.

172.     The Asset Purchase Agreement is a contract between ALT and Core Avionics.

173.     The Asset Purchase Agreement was supported by consideration.

174.     ALT breached numerous representations and warranties to Core Avionics made by ALT in connection with the Asset Purchase Agreement.

175.     Article 4 of the Asset Purchase Agreement contains numerous representations and warranties by ALT to Core Avionics with respect to the Purchased E4690 Drivers.

176.     In Section 4.10, ALT agreed that:

The statements and information by or on behalf of Seller to Buyer in connection with the negotiation of this Agreement and the Other Agreements do not contain any untrue statements of a material fact or omit a material fact necessary to make the material statements contained herein or therein not misleading.

177.     In Section 4.3(a) of the Asset Purchase Agreement, ALT represented to Core Avionics that ALT:

owns and has good title to the Transferred Intellectual Property. Except as set forth on Schedule 4.3, to the Knowledge of the Seller, no Person other than Seller has any right, claim or interest in or with respect to any Transferred Intellectual Property.

178.   ALT breached Section 4.3(a) of the Asset Purchase Agreement by failing to disclose material pre-existing contracts or license agreements with third parties and failing to disclose instances where it had disclosed the software to third parties without a license. Prior to the closing of the Asset Purchase Agreement on June 21, 2011, ALT had entered contracts with third parties, including but not limited to, Honeywell, Lockheed Martin, CARERI, General Dynamics UK, AITECH, ST Aero, MI Electronics and Intellics, where ALT had licensed Purchased E4690 Drivers, including the Customized E4690 Drivers. Apparently, without disclosing this to Core Avionics, ALT had also licensed the source code to one or more of the Purchased E4690 Drivers to Honeywell without disclosing this information to Core Avionics. ALT has failed and refused to disclose those agreements to Core Avionics to this date, maintaining those contracts are confidential.

179.   In Section 4.8 of the Asset Purchase Agreement, ALT represented and warranted to Core Avionics that "There are no material agreements relating primarily to the Products to which Seller is a party which are not included in the Contracts." The term "Products" is defined to mean all of ALT's rights in the software which constitutes the Purchased E4690 Drivers, including the Customized E4690 Drivers.

180.   ALT breached Section 4.8 of the Asset Purchase Agreement. In fact, as of June 21, 2011, ALT had entered into numerous contracts with third parties, including but not limited to, Honeywell, Lockheed Martin, CARERI, General Dynamics UK, AITECH,

ST Aero, MI Electronics and Intellics, related to the Purchased E4690 Drivers.

181.    In addition, upon information and belief, the Apollo version of the source code for the Purchased E4690 Drivers was based upon source code previously developed by ALT for Fujitsu for the Fujitsu Ruby processor.  ALT failed to disclose this to Core Avionics or to provide Core Avionics with any agreements relating to any claims Fujitsu may have in the source code.

182.    As a result of ALT's breaches, Core Avionics has been damaged.

### Count 7 – Specific Performance and Injunction to Compel Performance of Section 8.2 of the Asset Purchase Agreement Regarding Noncompetition

183.    Core Avionics realleges and incorporates Paragraphs 1-106.

184.    The Asset Purchase Agreement is a contract between ALT and Core Avionics.

185.    The Asset Purchase Agreement was supported by consideration.

186.    Section 8.2 of the Asset Purchase Agreement provided:

Noncompetition by Seller: Seller covenants and agrees that neither it nor any of its Affiliates or related parties will, directly or indirectly, on behalf of itself or any other party, sell, market, promote or distribute, license, research or develop OpenGL SC, 1.x or ES 2.0 product for the ATI E4690 GPU for a period of five years commencing on the Closing Date, or invest in, participate in or assist any other entity with respect to the foregoing, unless authorized to do so by Buyer in a Reseller, or other, Agreement.

187.    During the term of the Reseller Agreement, ALT repeatedly distributed the Purchased E4690 Drivers, including the Customized E4690 Drivers, to third parties without license agreements to those parties in breach of the Reseller Agreement and without the authorization of Core Avionics.

188.    During the term of the Reseller Agreement, ALT disclosed source code for

the Purchased E4690 Drivers, including the Customized E4690 Drivers, to third parties in breach of the Reseller Agreement and without the authorization of Core Avionics.

189.    After the termination of the Reseller Agreement, ALT has continued to sell, transfer, disclose or license to third parties, including but not limited to ENSCO iData, Techsource, and Mercury in direct competition with Core Avionics and in violation of Section 8.2 of the Asset Purchase Agreement.

190.    ALT continues to advertise on its website the sale of drivers competitive with the Purchased E4690 Drivers, including the Customized E4690 Drivers and/or continues to attempt to sell the Purchased E4690 Drivers, including the Customized E4690 Drivers.

191.    After the termination of the Reseller Agreement, ALT has continued its attempts to sell, market, promote, distribute, license, research or develop the Purchased E4690 Drivers, including the Customized E4690 Drivers, and the development and customization of the same, to third parties, including Cobham, ENSCO iData, Lockheed Martin, Mercury Computers, and, on information and belief, to AITECH.

192.    ALT's continued competition with Core Avionics has caused, and will continue to cause, irreparable harm to Core Avionics.  Due to ALT's unauthorized disclosures as set forth above, there is a significant and ongoing risk that ALT will disclose the Purchased E4690 Drivers, including the Customized E4690 Drivers, to third parties without authorization from Core Avionics.

193.    The restraint in Section 8.2 is supported by legitimate business interests of Core Avionics, including but not limited to, Core Avionics' trade secrets including in the

Purchased E4690 Driver and Customized E4690 Driver source and object code, Core Avionics' confidential business information including in the Purchased E4690 Drivers and Customized E4690 Drivers source code and object code, and Core Avionics' substantial relationships with existing customers, including but not limited to, Coordinate, Northrup Grumman, Honeywell, Lockheed Martin, CARERI and SAAB.

194.     Unless restrained or enjoined by this Court, ALT will continue its unauthorized competition.

195.     Damages are inadequate to compensate Core Avionics for ALT's breach of Section 8.2.

196.     Core Avionics has no adequate remedy at law.

### Count 9 – Declaratory Judgment – Ownership and Use of Customized E4690 Drivers, E6760 Source Code and HD3000 Source Code

197.     Core Avionics realleges and incorporates Paragraphs 1-106.

198.     This is an action for declaratory judgment as to Core Avionics' rights and ownership of the Purchased E4690 Drivers, and certain derivative works of the Purchased E4690 Drivers, including the Customized E4690 Drivers, created by ALT after the closing of the Asset Purchase Agreement and while ALT was a licensee under the License Agreement.

199.     This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 2201-2202.

200.     Pursuant to Section 2.1(a) of the Asset Purchase Agreement, effective June 21, 2011, ALT sold to Core Avionics "the copyrights, source code, object code and

documentation" constituting the Purchased E4690 Drivers "as well as trade secrets and know-how related to the E4690".

201.   Pursuant to Section 1 of the Intellectual Property Transfer Agreement, effective June 21, 2011, ALT assigned to Core Avionics:

> all of Assignor's right, title and interest in and to both the tangible and the intangible property constituting the Software [that is, the Purchased E4690 Drivers] in perpetuity (or for the longest period of time otherwise permitted by law), including all rights under the copyright laws of the United States and Canada, together with all other copyright interests accruing by reason of international copyright conventions.

202.   Pursuant to Section 4(A) of the Intellectual Property Transfer Agreement, ALT represented and warranted to Core Avionics that it:

> shall receive, pursuant to this Agreement, complete and exclusive right, title and interest in and to all tangible and intangible property rights existing in the Software, subject only to the rights reserved and retained pursuant to the terms of this Agreement.

203.   The Intellectual Property Transfer Agreement does not reserve to ALT any rights to reproduce, modify or make derivative works of the Purchased E4690 Drivers.

204.   Pursuant to Section 3.5 of the Reseller Agreement, effective June 21, 2011, ALT acknowledged that Core Avionics "is the sole owner of all intellectual property, including but not limited to...copyrights, patents, proprietary and confidential information or trade secrets, contained within the Products."

205.   Pursuant to Section 3.13 of the Reseller Agreement, ALT agreed to provide Core Avionics with all "revisions, modifications and updates to the Products, including source code, as well as current developments."

206.   Based upon the Asset Purchase Agreement, the License Agreement, the

Intellectual Property Assignment, and the Reseller Agreement, there can be no dispute that ALT conveyed to Core Avionics all of its right, title and interest in the copyrights, source code and object code to the Purchased E4690 Drivers.

207.    Nevertheless, ALT has made statements to Core Avionics and third parties that Core Avionics does not own all right, title, and interest in the Purchased E4690 Drivers or that ownership is in dispute.  There is further a dispute between the parties over ALT's right to continue to engage in software development of the Purchased E4690 Drivers under existing contracts.

208.    Section 1.4 of the License Agreement defined the term "Derivative Work" to mean:

> any software program(s), and copies thereof, which are developed by [Core Avionics] or Licensee and which are based on or incorporate any part of the Licensed Software provided by [Core Avionics] under this Agreement, including without limitation, any revision, modification, translation, abridgement, condensation, expansion, or any other form in which the Licensed Software may be recast, transformed or adapted, and that, if created without [Core Avionics'] consent would constitute infringement of [Core Avionics'] intellectual property and proprietary information rights, which may include copyright, patent or trademark rights and/or trade secrets within the Licensed Software.

209.    Section 1.4 of the License Agreement defined the term "Licensed Software" to include the Purchased E4690 Drivers "together with all Derivative Works relating thereto."

210.    Pursuant to Section 4.1 of the License Agreement, the parties agreed that Core Avionics "retains title to the Licensed Software (including all Derivative Works) and Documentation, and all copyright and other rights to all portions of the Licensed Software…, and all modifications and alterations thereto, and all copies thereof."

211.    Core Avionics agreed to give ALT good and valuable consideration for the Purchased E4690 Drivers, including $1 million USD, which Core Avionics paid to ALT, plus commissions for a five year period.

212.    After the closing of the Asset Purchase Agreement and other agreements, and during the term of the License Agreement, ALT created, marketed, and offered to sell the E6760 Driver.  ALT has further engaged in development of the HD3000 Driver.

213.    The HD3000 Driver is a "Derivative Work" of the "Licensed Software" as those terms are defined in the License Agreement.

214.    Upon information and belief, the E6760 Driver is a "Derivative Work" of the "Licensed Software" as those terms are defined in the License Agreement.

215.    The E6760 Driver and HD 3000 Driver, if they constitute derivative works, were unauthorized by Core Avionics.

216.    Under United States copyright law, the right to prepare derivative works of the Purchased E4690 Drivers is reserved to the copyright owner, Core Avionics.  17 U.S.C. § 106.

217.    Under the Copyright Act (Canada), the copyright owner, Core Avionics, has the sole right to produce or reproduce the work or any substantial part thereof in any material form whatever.  R.S.C. 1985, Ch.-42, § 3(1).

218.    For the reasons set forth above, there is an actual and real controversy between Core Avionics and ALT concerning the ownership of the Purchased E4690 Drivers, and whether the E6760 Driver and HD3000 Driver software constitute "Derivative Works" as defined by the License Agreement.

219. Core Avionics requests a declaration that: (i) it owns all right, title, and interest in the Purchased E4690 Drivers; (ii) the E6760 Driver and HD3000 Driver are derivative works of the Purchased E4690 Drivers; (ii) the copyright and all related rights to the E6760 Driver and HD3000 Driver are therefore owned by Core Avionics; and (iii) the E6760 Driver and HD3000 Driver may not be sold, licensed or used by ALT without a license from Core Avionics.

### Count 10 - Misappropriation Of Trade Secrets - Injunctive Relief

220. Core Avionics realleges and incorporates Paragraphs 1-106.

221. This is an action against ALT for injunctive relief for misappropriation of trade secrets pursuant to the Florida Uniform Trade Secrets Act, Chapter 688, Florida Statutes (hereinafter "Chapter 688").

222. Core Avionics' source code for the Purchased E4690 Drivers, including the Customized E4690 Drivers, constitutes a trade secret pursuant to Chapter 688.

223. The source code is not generally known or readily ascertainable through proper means by other persons who can obtain economic value from its disclosure or use.

224. The source code is the subject of reasonable efforts by Core Avionics under the circumstances to maintain its secrecy. Core Avionics only provides access to the source code to its personnel who need to have the information in the performance of their duties. Core Avionics requires those employees to enter into confidentiality agreements. The source code is maintained on encrypted, secured, password-protected servers maintained by Core Avionics. Core Avionics has not licensed or authorized any licensee or sub-licensee, other than ALT, to possess the source code. Under the

applicable agreements between Core Avionics and ALT, ALT was prohibited from disclosing the source code to third parties without the consent of Core Avionics.

225.   ALT's acquisition, disclosure and use of Core Avionics' trade secrets was under circumstances giving rise to a duty to maintain the secrecy or limit the use of the source code, under namely the License Agreement and Reseller Agreement.

226.   ALT has misappropriated the trade secrets of Core Avionics within the meaning of Chapter 688.  Specifically, as set forth above, ALT disclosed the source code to third parties without the consent of Core Avionics, and ALT has used Core Avionics' source code without authorization to create unauthorized derivative works.

227.   ALT's misappropriation was willful and malicious.

228.   Due to ALT's actual or threatened misappropriation, Core Avionics is entitled to injunctive relief for the misappropriation of its trade secrets pursuant to Section 688.003, Florida Statutes.

229.   Core Avionics has been and will continue to be injured in its business, and the threat of continued injury outweighs any harm the issuance of an injunction may cause to ALT.

230.   Core Avionics has a substantial likelihood of success on the merits of its claims against ALT.

231.   The issuance of an injunction requested herein by Core Avionics will in all respects serve the public good, in that companies who have expended time and resources developing confidential information and computer source code, and who provide licensees with access to their confidential information for the purpose of using it solely

on behalf of the company, should be able to protect their interests from third parties who would unfairly take advantage of that information and use it on behalf of themselves or others.

232.   Core Avionics has no adequate remedy at law.

233.   Core Avionics is entitled to attorneys' fees pursuant to Section 688.005, Florida Statutes, for which ALT is responsible.

### Count 11 - Misappropriation Of Trade Secrets – Damages

234.   Core Avionics realleges and incorporates Paragraphs 1-106.

235.   This is an action against ALT for damages pursuant to the Florida Uniform Trade Secrets Act, Chapter 688, Florida Statutes (hereinafter "Chapter 688").

236.   Core Avionics' source code for the Purchased E4690 Drivers, including the Customized E4690 Drivers, constitutes a trade secret pursuant to Chapter 688.

237.   The source code is not generally known or readily ascertainable through proper means by other persons who can obtain economic value from its disclosure or use.

238.   The source code is the subject of reasonable efforts by Core Avionics under the circumstances to maintain its secrecy.   Core Avionics only provides access to the source code to its personnel who need to have the information in the performance of their duties.   Core Avionics requires those employees to enter into confidentiality agreements.   The source code is maintained on encrypted, secured, password-protected servers maintained by Core Avionics.   Core Avionics has not licensed or authorized any licensee or sub-licensee, other than ALT, to possess the source code.   Under the applicable agreements between Core Avionics and ALT, ALT was prohibited from

disclosing the source code to third parties without the consent of Core Avionics.

239.   ALT's acquisition, disclosure and use of Core Avionics' trade secrets was under circumstances giving rise to a duty to maintain the secrecy or limit the use of the source code, under namely the License Agreement and Reseller Agreement.

240.   ALT has misappropriated the trade secrets of Core Avionics within the meaning of Chapter 688.  Specifically, as set forth above, ALT disclosed the source code to third parties without the consent of Core Avionics, and ALT has used Core Avionics' source code without authorization to create unauthorized derivative works.

241.   ALT's misappropriation was willful and malicious.

242.   As a result of ALT's wrongful conduct, Core Avionics has suffered damages, including lost profits, lost licensing revenue and damage to its goodwill and business.

243.   Core Avionics is entitled to damages, including the actual losses caused by the misappropriation and the unjust enrichment caused by ALT's misappropriation of trade secrets belonging to Core Avionics, pursuant to Section 688.005, Florida Statutes.

244.   Due to ALT's willful and malicious misappropriation, Core Avionics is entitled to exemplary damages of up to twice the damages awarded pursuant to Section 688.004, Florida Statutes.

245.   Core Avionics is entitled to attorneys' fees pursuant to Section 688.005, Florida Statutes, for which ALT is responsible.

### PRAYER FOR RELIEF

WHEREFORE, Core Avionics respectfully requests that the Court:

1.    Grant Core Avionics preliminary and permanent injunctive relief restraining and enjoining ALT, and all persons acting in active concert with ALT:

    a.  from any further use, modification, reproduction or disclosure of the Purchased E4690 Drivers, including the Customized E4690 Drivers and their source code;

    b.  from directly or indirectly, on behalf of itself or any other party, selling, marketing, promoting, distributing, licensing, researching or developing OpenGL SC, 1.x or ES 2.0 driver software for the ATI E4690 graphics processor unit worldwide for the entire five-year period to which Core Avionics was entitled under the Asset Purchase Agreement;

    c.  to return all source code and object code for the Purchased E4690 Drivers, including the Customized E4690 Drivers, to Core Avionics, except that ALT may retain one copy of the source and object code for ongoing support obligations to end users under identified and specified license agreements so long as those support obligations remain in effect;

    d.  to deliver to Core Avionics and retain no copies of all revisions, modifications, updates and documentation for the Purchased E4690 Drivers, including the Customized E4690 Drivers, except that ALT may retain one copy of the source and object code for ongoing support obligations to end users under identified and specified license

agreements so long as those support obligations remain in effect;

    e.  from the use, license, reproduction or sale of the E6760 Driver; and

    f.  from the use, license, reproduction or sale of the HD3000 Driver.

2.      Enter judgment for damages in favor of Core Avionics and against ALT, together with prejudgment and post-judgment interest;

3.      Award Core Avionics exemplary damages of up to twice Core Avionics' actual damages due to ALT's willful and malicious misappropriation of Core Avionics' trade secrets pursuant to Section 688.004(2), Florida Statutes;

4.      Grant a decree of specific performance requiring ALT to:

    a.  to deliver all source code and object code for the Purchased E4690 Drivers, including the Customized E4690 Drivers, to Core Avionics and retain no copies, except that ALT may retain one copy of the source and object code for ongoing support obligations to end users under identified and specified license agreements so long as those support obligations remain in effect;

    b.  to deliver to Core Avionics all revisions, modifications, updates and documentation for the Purchased E4690 Drivers, including the Customized E4690 Drivers and retain no copies, except that ALT may retain one copy of the source and object code for ongoing support obligations to end users under identified and specified license agreements so long as those support obligations remain in effect;

    c.  comply with Sections 3.13 and 11.3 of the Reseller Agreement;

     d.   comply with Sections 3.1.16, 8.2 and 9.2 of the License Agreement;

     e.   comply with Sections 2 of the Intellectual Property Transfer Agreement; and

     f.   comply with Section 8.2 of the Asset Purchase Agreement;

5.     Grant Core Avionics declaratory relief declaring that

     a.   the E6760 Driver and HD3000 Driver are derivative works of the Purchased E4690 Drivers;

     b.   the copyright and all related rights therein are therefore owned by Core Avionics; and

     c.   the E6760 Driver and HD3000 Driver may not be sold, licensed or used by ALT without a license from Core Avionics;

6.     Award Core Avionics its reasonable attorney's fees and costs under all applicable contracts and statutes;

7.     Tax costs in favor of Core Avionics; and

8.     Grant such further relief as this Court deems just.

<u>Plaintiff demands a jury trial on all claims so triable.</u>

Dated this 24th day of August, 2012.

Respectfully submitted,

Richard H. Martin, Esq.
Florida Bar Number:  579831
Email:  richard.martin@akerman.com
Wesley D. Tibbals, Esq.
Florida Bar Number: 163880

Email:  wes.tibbals@akerman.com
Jason Margolin, Esq.
Florida Br Number: 69881
Email:  jason.margolin@akerman.com
AKERMAN SENTERFITT
401 E. Jackson Street
Suite 1700
Tampa, FL  33602-5250
Phone:  (813) 223-7333
Fax:  (813) 223-2837

## **VERIFICATION**

STATE OF FLORIDA                    )

COUNTY OF HILLSBOROUGH          )

BEFORE ME, the undersigned authority, personally came and appeared Laurence E. Pappas, who, be duly sworn, deposes and says that he is the Vice President for the Plaintiff, Core Avionics & Industrial LLC., that he has read the above and foregoing Verified Complaint, and that the allegations contained therein are true and correct to the best of his knowledge, information and belief; that the sources of his knowledge are the reports made to him by the employees of Core Avionics & Industrial LLC. and his personal knowledge.  Further, he is authorized to sign this Verified Complaint on behalf of Core Avionics & Industrial LLC.

_____

Laurence E. Pappas, Vice President


Sworn to and subscribed before me this 24th day of August, 2012, by  who is personally known to me or produced Driver's License (Florida) (type of identification) as identification.

_____

Signature of person taking acknowledgment

Nicole  M.  Emmett

(Typed, printed or stamped name of acknowledger)

Notary Public, State of Florida

Commission Number: DD 940044

My Commission Expires: 11-15-2013

NICOLE M. EMMETT
Commission # DD 940044
My Commission Expires
November 15, 2013